UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN LENARD SODERBERG,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF MCCALL; DALLAS PALMER, JUSTIN WILLIAMS; ESTATE OF EUGENE PAUL DRABINSKI; EUGENE PAUL DRABINSKI; LARRY STOKES; DOES 1 – 25,<br><br>    Defendants. | Case No. 1:16-cv-00045-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court in the above entitled matter is Defendants' Motion for Summary Judgment. (Dkt. 15.)[1] The parties have filed responsive briefing and the Motion is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly,

---

[1] Defendants also filed a Motion to Strike the Declaration of Gerald A. Summers. (Dkt. 25.) That Declaration was not relevant to the Court's ruling on the Motion for Summary Judgment and, therefore, the Motion to Strike is deemed moot.

in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motion shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff John Soderberg was a guest at the Shore Lodge hotel in McCall, Idaho when the incident that led to this suit took place. (Dkt. 3, 22.) On February 1, 2015, at or around 2:30 a.m., Mr. Soderberg was socializing with friends in his hotel room when the front desk called and asked him and his guests to quiet down. Sometime after receiving the phone call, Mr. Soderberg heard a knock at his hotel room door. (Dkt. 3 at ¶ 5.6.) Mr. Soderberg answered the door, opening it about a foot. (Dkt. 22-2, Aff. Soderberg at ¶ 9.) When Mr. Soderberg opened the door he observed two individuals standing in the dimly lit hotel hallway. (Dkt. 3 at ¶ 5.11.) The first individual was standing in the hallway immediately in front of his door and identified himself as a Shore Lodge Security Officer. (Dkt. 22-2, Aff. Soderberg at ¶ 8.) Mr. Soderberg observed a second individual standing, mostly out of view, behind the Shore Lodge Security Officer who, Mr. Soderberg states, was wearing dark clothing and did not speak or identify himself. (Dkt. 3 at ¶ 5.11.) That second individual was Defendant Dallas Palmer, a police officer with the McCall City

---

[2] The Court accepts the facts as presented by Mr. Soderberg as true for purposes of this Motion, except where specifically noted.

Police Department ("MPD"), who was wearing his full MPD uniform with his gun and badge visible.[3] (Dkt. 15-3, Aff. Palmer ¶ 14.)

While Mr. Soderberg was speaking with the Shore Lodge Security Officer, Officer Palmer came to the forefront and "began barking commands at Mr. Soderberg." (Dkt. 22.) Officer Palmer demanded that Mr. Soderberg leave his room and step into the hallway to speak with him. (Dkt. 3 at ¶ 5.12.) When Mr. Soderberg refused, Officer Palmer told him that "he smelled marijuana coming from the room and yelled at him to come out or he was going to be arrested." (Dkt. 22.) Again, Mr. Soderberg refused and when he tried to retreat into his hotel room, Officer Palmer placed his foot inside of the room and wedged it against the door preventing Mr. Soderberg from closing it. (Dkt. 3 at ¶ 5.14.) Mr. Soderberg reacted in turn by wedging his foot against the inside of the door to keep the door from opening further. (Dkt. 22.) Attempting to force the door open, Officer Palmer threw his body against the door from his position in the hallway. (Dkt. 22.) Officer Palmer then grabbed Mr. Soderberg by the arms and kicked his leg several times in an attempt to knock Mr. Soderberg's foot away from the inside of the door. (Dkt. 3 at ¶¶ 5.15-5.16.) Mr. Soderberg alleges that Officer Palmer "physically wrenched" him from "behind the partially opened door" into the hallway "while punching and kicking him, and then threw him to the ground on all-fours." (Dkt. 22.) Officer Palmer ordered Mr. Soderberg to get on his stomach and

_____

[3] Mr. Soderberg does not dispute that Officer Palmer was wearing his MPD uniform, but instead argues he could not make it out because the hallway where Officer Palmer was standing was too dark. (Dkt. 22-2, Aff. Soderberg ¶ 10.)

put his hands behind his back all the while kicking and striking Mr. Soderberg, including knee strikes to his ribs. (Dkt. 3 at ¶ 5.18.) The hallway was narrow and Mr. Soderberg states that he could not stretch out and lie on his stomach from the position he was in. (Dkt. 22.) Eventually, Mr. Soderberg was handcuffed and led out to a patrol car. He was arrested for frequenting a premises where drugs are being used and resisting and obstructing an officer. (Dkt. 3 at ¶¶ 5.21, 5.27.) Mr. Soderberg was placed in jail until he could make bail. Thereafter, Mr. Soderberg's attorney filed a motion to suppress evidence. The prosecutor ultimately dismissed the charges against Mr. Soderberg. (Dkt. 3 at ¶ 5.29.)

Mr. Soderberg contends that as a result of this incident and the subsequent criminal charges, he has suffered emotional and mental trauma, damage to his reputation and credibility that resulted in the loss of his pharmaceutical representative job, and a lack of steady employment at a comparable compensation level. (Dkt. 3 at ¶¶ 5.32-5.34.)

On January 30, 2016, Mr. Soderberg initiated these proceedings against the City of McCall, Officer Dallas Palmer, McCall Chief of Police Justin Williams, the Estate of former City Manager Eugene Drabinski, and former Interim McCall Chief of Police Larry Stokes. In his Complaint, Mr. Soderberg raises several § 1983 claims alleging the Defendants violated his constitutional rights when Officer Palmer conducted an unlawful search and seizure, invaded his right to privacy, used excessive force, and falsely arrested and confined him. (Dkt. 3.) Mr. Soderberg also raises other federal claims under § 1983 including conspiracy-failure to investigate; failure to supervise, train, and discipline; negligence; failure to implement appropriate policies; and malicious prosecution. (Dkt. 3.)

ORDER-4

Additionally, Mr. Soderberg asserts the following state law claims: unlawful search and seizure; unlawful entry; assault and battery; discrimination; false imprisonment; trespass and malicious injury to property; intentional and negligent infliction of emotional distress; and negligence. (Dkt. 3.)

On March 16, 2017, Defendants filed this Motion for Summary Judgment as to all of Mr. Soderberg's claims which the Court now takes up. (Dkt. 15.)

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Summary judgment is "not a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Rule 56 mandates summary judgment if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-

ORDER-5

moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. To show the material facts are not in dispute, a party may cite to particular parts of the record, or show that the materials cited in the record do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A), (B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

The materials presented by the parties must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The Court does not make credibility determinations or weigh the evidence put forth by the non-moving party and it must view all of the evidence in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## DISCUSSION

This is a civil rights action. Mr. Soderberg's federal claims are brought under 42 U.S.C. § 1983 alleging violations of his Fourth, Fifth, and Fourteenth Amendment rights. (Dkt. 3.) His state law claims allege violations of the Idaho Constitution and state law.

As a preliminary matter, Mr. Soderberg concedes that Defendants should be granted summary judgment on the following federal claims: (1) right to privacy, as it is subsumed by his search and seizure claim, and (2) conspiracy-failure to investigate. (Dkt. 22.) Mr. Soderberg also concedes that Defendants should be granted summary judgment on the

ORDER-6

following state law claims: (1) unlawful search and seizure, (2) unlawful entry, (3) discrimination, and (4) malicious injury to property. (Dkt. 22.) As such, this Court grants Defendants' Motion as to Counts Three, Four, Five, Eight, Eleven, and Fourteen of the Complaint. (Dkt. 3.) The Court finds as follows on the remaining claims.

1.    **Section 1983 Claims**

"Section 1983 provides a cause of action for violations of a plaintiff's constitutional or other federal rights by persons acting under color of state law." *Summers v. City of McCall*, 84 F.Supp.3d 1126, 1146 (D. Idaho 2015) (citing *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009)). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000) (citing *Wyatt v. Cole*, 504 U.S. 158, 161 (1992)). To prevail on a § 1983 claim, the plaintiff must show that (1) acts by the defendant, (2) under color of state law, (3) deprived him of federal rights, privileges, or immunities and (4) caused him damage. *See Wyatt,* 504 U.S. at 161 (citing *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005)).

The parties do not dispute that Officer Palmer was acting under the color of state law. The issue before the Court on these claims is whether Office Palmer's acts deprived Mr. Soderberg of his federal rights, privileges, or immunities.

A.    **Search & Seizure and False Arrest Claims Against Defendant Palmer**

Mr. Soderberg argues Officer Palmer violated his Fourth Amendment rights when (1) Officer Palmer searched and seized him without probable cause and exigent

ORDER-7

circumstances and (2) Officer Palmer maliciously and falsely arrested and confined him without a warrant or probable cause. (Dkt. 3.) Defendants contend that Officer Palmer's conduct was lawful because the search and seizure was supported by probable cause and exigent circumstances and the arrest was supported by probable cause. (Dkt. 15-1.)

The Fourth Amendment guarantees individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and that no warrant "shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. AMEND. IV. "The purpose of this amendment is to 'safeguard the privacy and security of individuals against arbitrary invasions by government officials.'" *Silva v. City of San Leandro*, 744 F.Supp.2d 1036, 1050 (N.D. Cal. 2010) (quoting *Camara v. Municipal Court of the City and Cnty. of San Francisco*, 387 U.S. 523, 528 (1967)). "The text of the Amendment thus expressly imposes two requirements. First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable case is properly established." *Kentucky v. King,* 563 U.S. 452, 459 (2011) (citation omitted). While "[a] seizure conducted without a warrant is per se unreasonable under the Fourth Amendment," the presumption of unreasonableness can be overcome by "specifically established and well delineated exceptions." *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017) (internal quotations omitted); *see also Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009); *United States v. Hawkins,* 249 F.3d 867, 872 (9th Cir. 2001).

### i.    Search & Seizure Claim

Defendants argue that Officer Palmer had probable cause to believe Mr. Soderberg was violating the law when he smelled marijuana emanating from Mr. Soderberg's hotel room and his concern that evidence would be imminently destroyed was an exigent circumstance justifying his entry into the hotel room. (Dkt. 15-1.) Mr. Soderberg contends that Officer Palmer entered his hotel room and seized him without probable cause and unsupported by any exigent circumstances. (Dkt. 22.)

One well-recognized exception to the Fourth Amendment warrant requirement "applies when 'the exigencies of the situation make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable.'" *King*, 563 U.S. at 459 (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)). An officer may lawfully conduct a search and seizure without a warrant if he has "probable cause to believe that a crime has been or is being committed" and exigent circumstances exist. *Sandoval v. Las Vegas,* 756 F.3d 1154, 1161 (9th Cir. 2014); *see also Hopkins*, 573 F.3d at 766-67 (The exigent circumstances exception requires that (1) the officer had probable cause to search the house and (2) exigent circumstances justified the warrantless intrusion.). "[T]he exigent circumstances rule justifies a warrantless search when the conduct of the police preceding the exigency is reasonable…[and,] where…police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed." *King*, 563 U.S. at 462.

ORDER-9

"Probable cause exists 'when the facts and circumstances within [an officer's] knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime.'" *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017) (quoting *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011)). "The analysis involves both facts and laws. The facts are those that were known to the officer at the time of the arrest. The law is the criminal statute to which those facts apply." *Id.* "Probable cause…is not a high bar: It requires only the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." *Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014). The standard is an objective one, and "[t]he arresting officers' subjective intention…is immaterial in judging whether their actions were reasonable for Fourth Amendment purposes." *Kaley*, 134 S.Ct. at 1103. "[T]he question of whether a reasonable officer could have believed probable cause existed goes to the jury unless there is only one conclusion a rational jury could reach." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 872 (9th Cir. 1993).

A situation is considered exigent when the circumstances "'make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.'" *United States v. Struckman*, 603 F.3d 731, 743 (9th Cir. 2010) (quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)). The Ninth Circuit has found, while not an immutable list, that exigent circumstances include: "'(1) the need to prevent physical harm to the officers or other person, (2) the need to prevent the imminent destruction of relevant evidence, (3) the hot pursuit of a fleeing suspect, and (4) the need

to prevent the escape of a suspect.'" *Id.* (quoting *Fisher v. City of San Jose*, 558 F.3d 1069, 1075 (9th Cir. 2009)).

Officer Palmer's entry into Mr. Soderberg's hotel room in order to detain him to investigate the smell of marijuana was supported by probable cause. Under Idaho Code § 37-3732(c), it is "unlawful for any person to possess a controlled substance" without a valid prescription. Possession of marijuana, a Schedule I controlled substance, is a felony in Idaho. *See* Idaho Code § 37-2705(d)(27) and § 37-3732(c)(1). Further, Idaho Code § 37-2732(d) makes it a misdemeanor "for any person to be present at any place in which he knows illegal controlled substances are being held for use." *See State v. Williams*, 394 P.3d 99, 109 (Idaho Ct. App. 2016). In his Declaration, Officer Palmer states he has training and experience in detecting drugs, including marijuana. (Dkt. 15-3, Dec. Palmer at ¶ 7.) While the Shore Lodge Security Officer was speaking with Mr. Soderberg at the door, Officer Palmer detected what he believed to be, based on his training and experience, the smell of marijuana coming from Mr. Soderberg's hotel room. (Dkt. 15-3, Dec. Palmer.)

Mr. Soderberg does not argue that it was impossible for Officer Palmer to smell marijuana. Instead he makes two conclusory, albeit sworn, statements. First, Mr. Soderberg states that he is a law abiding citizen. (Dkt. 22-2, Aff. Soderberg at ¶ 35.) Second, relying on the Shore Lodge front desk manager's inspection of Mr. Soderberg's room after he checked out on February 2, 2014, he maintains that there was no evidence of smoking or marijuana found in his hotel room. (Dkt. 22-2, Aff. Soderberg at ¶¶ 33-35) (Dkt. 22-2, Ex. B.) These statements do not create a genuine issue of material fact.

Based on Officer Palmer's training and experience and his having detected the smell of marijuana emanating from Mr. Soderberg's hotel room, it was reasonable for Officer Palmer to believe there was marijuana in the room unlawfully. *See Lingo v. City of Salem*, 832 F.3d 953, 961 (9th Cir. 2016) (citing *United States v. Kerr*, 876 F.2d 1440, 1445 (9th Cir. 1989 ("[T]he presence of the odor of contraband may itself be sufficient to establish probable cause" for issuance of a warrant.); *State v. Derrah*, 84 P.3d 1084, 1087 (Or. Ct. App. 2004) ("The scent of marijuana, emanating from a residence, without more, is sufficient to support a conclusion that marijuana will likely be found inside that residence.")); *see also State v. Cunningham*, No. 41167, 2014 WL 5410648, at *4 (Idaho Ct. App. Oct. 23, 2014) (concluding that the smell of marijuana from a heating vent outside of a residence was sufficient to support a reasonable nexus for probable cause to issue a search warrant for the residence). The Court finds probable cause existed in this case.

The Court further finds exigent circumstances were present to justify Officer Palmer's entry into Mr. Soderberg's hotel room. Officer Palmer smelled marijuana coming from Mr. Soderberg's hotel room and Officer Palmer stated he heard, and Mr. Soderberg admits there were, other individuals in his room at the time. Based on this information, Officer Palmer's concern that the evidence would be destroyed or used before he could obtain a warrant, was objectively reasonable.

Based on the foregoing, the Court finds Officer Palmer had probable cause when he entered Mr. Soderberg's hotel room to investigate the smell of marijuana where he reasonably believed, based on the totality of circumstances, that marijuana was present and

ORDER-12

would be imminently destroyed. *See United States v. Ojeda*, 276 F.3d 486, 488 (9th Cir. 2002).

Because both probable cause and exigent circumstances were present, Officer Palmer's entry into the hotel room and the seizure of Mr. Soderberg did not violate his Fourth Amendment right. Defendants' are entitled to summary judgment on the Fourth Amendment claim relating to Officer Palmer's search and seizure.

### ii.    False Arrest and Confinement Claim

Mr. Soderberg asserts that Officer Palmer violated his Fourth Amendment rights when he was maliciously and falsely arrested without a warrant or probable cause and then confined. (Dkt. 3.)

To prevail on a § 1983 claim for false arrest and confinement, the plaintiff must demonstrate that there was no probable cause to arrest. *See Norse v. City of Santa Cruz*, 629 F.3d 966, 978 (9th Cir. 2010) (quoting *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998)). As such, "[t]he absence of probable cause is a necessary element of [a] § 1983 false arrest…claim." *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015). And a warrantless arrest is constitutional if, "at the moment the arrest was made, the officer had probable cause to make it." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964); *see also United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979); *see also*

*Beauregard v. Wingard*, 362 F.2d 901, 903 (9th Cir. 1966) ("[W]here probable cause does exist civil rights are not violated by an arrest even though innocence may subsequently be established.")

The Court finds that Officer Palmer had probable cause to arrest Mr. Soderberg. In determining whether Officer Palmer had probable cause at the time of the arrest, the Court considers "whether at that moment the facts and circumstances within [the Officer's] knowledge…were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Edgerly v. City and Cnty. of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010) (quoting *Beck*, 379 U.S. at 91). "Although conclusive evidence of guilt is not necessary to establish probable cause, 'mere suspicion, common rumor, or even strong reason to suspect are not enough.'" *Id.* (quoting *Lopez,* 482 F.3d at 1072).

In this case, Mr. Soderberg alleges facts, which the Court takes as true for purposes of this Motion, that could have led a reasonable officer to believe probable cause existed to arrest Mr. Soderberg for resisting and obstructing an officer in violation of Idaho Code § 18-705.[4] Resisting and Obstructing is a misdemeanor offense that requires proof of three elements: (1) willful resistance, delay, or obstruction of an officer's duties; (2) the person

---

[4] Idaho Code § 18-705 states: "Every person who willfully resists, delays or obstructs any public officer, in the discharge, or attempt to discharge, of any duty of his office or who knowingly gives a false report to any peace officer…is punishable by a fine not exceeding one thousand dollars ($1,000), and imprisonment in the county jail not exceeding one (1) year."

resisting knew that the other person was an officer, and (3) the resisting person also knew at the time of the resistance that the officer was attempting to perform an official act or duty. *State v. Adams*, 67 P.3d 103, 108 (Idaho Ct. App. 2003).

Mr. Soderberg argues his actions were not in violation of Idaho Code § 18-705 because he did not know Officer Palmer was a police officer when he answered his hotel room door as his view was obstructed by the hotel security guard and the hallway was dimly lit. (Dkt. 22-2, Aff. Soderberg at ¶ 10.) However, the probable cause determination is made based on the facts and circumstances known by Officer Palmer, not Mr. Soderberg, and there is no dispute that Officer Palmer was wearing his official MPD uniform, duty belt, gun, radio, and badge. (Dkt. 15-3, Aff. Palmer at ¶ 14.) Moreover, Officer Palmer stepped in front of the hotel security guard when he told Mr. Soderberg that he smelled marijuana and ordered Mr. Soderberg to exit his hotel room. (Dkt. 22-2, Aff. Soderberg at ¶¶ 10-13.) When Mr. Soderberg refused, Officer Palmer told him that if he did not exit the room he would be arrested. (Dkt. 22-2, Aff. Soderberg ¶ 14.) Officer Palmer then attempted to physically remove Mr. Soderberg from his room and Mr. Soderberg tried closing the door on the officer. It was then that Officer Palmer stuck his foot in the door and attempted to force it open while Mr. Soderberg continued to resist from the inside by trying to close the door and refusing to comply with Officer Palmer's commands. (Dkt. 22-2, Aff. Soderberg ¶¶ 15-21.) Even if Mr. Soderberg did not know Officer Palmer was a police officer when he initially answered the door, a reasonable officer in this situation would

ORDER-15

have believed that Mr. Soderberg was resisting and obstructing the officer's ability to discharge his duty to investigate the smell of marijuana.

Officer Palmer was in uniform, stated that he smelled marijuana, ordered Mr. Soderberg to exit the room, and warned Mr. Soderberg that he would be arrested if he failed to comply. In response, Mr. Soderberg was noncompliant and resisted Officer Palmer's attempts to investigate. Based on the totality of the circumstances, a reasonable officer would have believed he had probable cause to arrest Mr. Soderberg for resisting and obstructing in violation of Idaho Code § 18-705. *See Edgerly,* 599 F.3d at 954 (Probable cause must exist under some specific criminal statute.) Therefore, the arrest did not violate Mr. Soderberg's constitutional rights and Defendants are granted summary judgment on the false arrest and confinement claim.

In sum, Mr. Soderberg's § 1983 search and seizure and false arrest and confinement claims against Officer Palmer fail. Officer Palmer lawfully searched, seized, and arrested Mr. Soderberg. Therefore, Officer Palmer did not violate Mr. Soderberg's Fourth Amendment rights. Defendants are entitled to summary judgment on these claims.[5]

### B. Excessive Force Claim Against Defendant Palmer

---

[5] Defendants also argue Officer Palmer is entitled to qualified immunity on the Fourth Amendment § 1983 claims. However, because the Court concludes that no constitutional violation occurred, the Court need not address the issue of qualified immunity. *See Saucier v. Katz,* 533 U.S. 194, 201 (holding that the threshold question is whether "the facts alleged show the officer's conduct violated a constitutional right…If no constitutional right would have been violated were the allegation established, there is no necessity for further inquiries concerning qualified immunity.")

Mr. Soderberg contends that Officer Palmer used excessive force to effectuate his unlawful arrest, thereby violating his Fourth Amendment rights. (Dkt. 3, 22.)

"Force is excessive when it is greater than is reasonable under the circumstances." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The United States Supreme Court has recognized that the right to make an arrest is accompanied by the right to employ "some degree of physical coercion or threat thereof" to effectuate that arrest. *Graham,* 490 U.S. at 396. While police officers are not required to employ the "least intrusive degree of force possible," the amount of "force which [i]s applied must be balanced against the need for that force." *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994) and *Deorle v. Rutherford*, 272 F.3d 1272, 1279 (9th Cir. 2001).

Summary judgment is appropriate on an excessive force claim where the Court "concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under all circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396-97. As such, the "reasonableness of a particular use of force must be lodged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 397.

The Ninth Circuit employs a three step inquiry to determine whether police officers used excessive, and therefore, constitutionally unreasonable, force while effectuating an arrest. *Miller v. Clark Cnty.*, 340 F.3d 959 (9th Cir. 2003). In the first step of the inquiry, the Court assesses the extent of the intrusion on the plaintiff's Fourth Amendment rights "by evaluating the type and amount of force inflicted." *Miller*, 340 F.3d at 964. The second step calls for the Court to assess the importance of the government interests at stake by analyzing the *Graham* factors: "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham*, 490 U.S. at 396). Finally, in the third step of the excessive force inquiry, the Court "balances the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable." *Id.* (citing *Headwaters Forest Defense v. County of Humboldt*, 240 F.3d 1185, 1199 (9th Cir. 2000)).

### i.     The Type and Amount of Force Used

In assessing the quantum of force used to arrest Mr. Soderberg, the Court considers "the type and amount of force inflicted." *Deorle*, 272 F.3d at 1279 (internal quotation and citation omitted); *see also Lowry v. City of San Diego,* 858 F.3d 1248, 1256 (9th Cir. 2017).

Taking the facts as presented by Mr. Soderberg as true, Officer Palmer deployed numerous leg and knee strikes to Mr. Soderberg's legs and ribs, physically "wrenched" him from his hotel room, threw him on the ground of the hotel hallway, and pinned him there until another officer arrived and he was handcuffed. (Dkt. 3.) The force employed by

ORDER-18

Officer Palmer was more than nonphysical commands, but substantially less than intermediate force. *See Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) ("intermediate force is the most severe force authorized short of deadly force.") The Ninth Circuit has determined that blows from a baton, strikes from a Taser, and police dog bite and holds resulting in severe injury are examples of intermediate force and represent significant intrusions. *See Young v. County. of Los Angeles,* 655 F.3d 1156, 1161–62 (9th Cir. 2011); *Bryan v. MacPherson,* 630 F.3d 805, 810, 826 (9th Cir. 2010); *Chew v. Gates,* 27 F.3d 1432, 1441 (9th Cir. 1994). While "the severity of the injuries may support an inference that the force used was [a] substantial" intrusion, no such inference can be made here. *Santos v. Gates*, 287 F.3d 846, 855 (9th Cir. 2002). Mr. Soderberg describes his injuries as consisting of bruises, scrapes, and pain to his ribs. The injuries Mr. Soderberg sustained were minor. *See Jackson v. City of Bremerton*, 268 F.3d 646 (9th Cir. 2001) (The Court held the suspect suffering from a broken finger and discomfort from a chemical solution running into her eyes were minor injuries.) The Court finds the amount and type of force used by Officer Palmer was a minimal, but not an insignificant, intrusion on Mr. Soderberg's Fourth Amendment rights.

Interpreting the facts in favor of Mr. Soderberg, the Court finds this step of the inquiry weighs in favor of Officer Palmer. The amount of force employed was minimal and did not result in a serious intrusion on Mr. Soderberg's Fourth Amendment interests.

### ii. The City's Interest in the Use of Force

As noted above, within the second step of the inquiry, the Court considers the three *Graham* factors in order to evaluate the government's interest in the use of force. *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011); *Graham*, 490 U.S. at 396.

The first *Graham* factor, the severity of the crime at issue, weighs in favor of Officer Palmer. There is no dispute that Officer Palmer was accompanying the Shore Lodge Security Officer to Mr. Soderberg's hotel room based on a noise complaint, a minor matter. However, the situation quickly escalated when Mr. Soderberg opened his door and Officer Palmer smelled marijuana, followed by Mr. Soderberg's resistance and obstruction of Officer Palmer's lawful attempts to enter, investigate, and detain Mr. Soderberg. For purposes of this factor, the crime at issue is the misdemeanor offense of obstructing and resisting an officer. When Mr. Soderberg resisted, albeit passively based on his description of the incident, Officer Palmer was confronted with circumstances justifying the use of some degree of force. *See Wise v. Kootenai Cnty.*, 2013 WL 1789716, at *7 (D. Idaho Apr. 26, 2013).

"The second *Graham* factor, 'whether the suspect pose[d] an immediate threat to the safety of the officers or others,' is 'the most important single element of the three specified factors.'" *Lowry,* 858 F.3d at 1258 (quoting *Chew,* 27 F.3d at 1441). Interpreting the facts in favor of Mr. Soderberg as the nonmoving party, Mr. Soderberg's passive resistance did not pose an immediate threat to the safety of Officer Palmer or anyone else. Nor is there anything in the record that shows Mr. Soderberg was armed, violent, or threatening. This factor weighs in favor of Mr. Soderberg.

ORDER-20

The third *Graham* factor, whether the plaintiff actively resisted arrest or attempted to evade arrest by flight does not weigh substantially in favor of either party. "'[T]he level of force an individual's resistance will support is dependent on the factual circumstances underlying that resistance.'" *Lowry*, 858 F.3d at 1258. Mr. Soderberg did not attempt to flee or violently resist, however, he did engage in some resistance by refusing to comply with Officer Palmer's demands to exit his hotel room, attempting to shut the hotel room door on Officer Palmer, and failing to comply with Officer Palmer's orders to lay on his stomach and place his hands behind his back once he was on the ground. *See Mattos v. Agarano*, 661 F.3d 433, 445 (9th Cir. 2011). "'Even purely passive resistance can support the use of some force.'" *Lowry*, 858 F.3d at 1258 (quoting *Bryan*, 630 F.3d at 830 (9th Cir. 2010)). This factor does not weigh significantly either way.

Additionally, in assessing the City's interest in the use of force, the Court has identified two other relevant factors: (1) the availability of less intrusive alternatives to the force employed and (2) whether proper warnings were given. *See Lowry,* 858 F.3d at 1259; *see also Glenn*, 673 F.3d at 872.

As to the first additional factor, the Court considers "'whether there were less intrusive means of force that might have been used before officers resorted'" to the force at issue. *Lowry*, 858 F.3d at 1259 (quoting *Glenn*, 673 F.3d at 876). "In assessing alternatives, however, we must not forget that 'officers are not required to use the least intrusive degree of force possible.'" *Lowry*, 858 F.3d at 1259 (quoting *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012) (internal quotations omitted)). Mr. Soderberg

contends he did not know Officer Palmer was a police officer and that Officer Palmer failed to use the most basic display of authority by announcing he was an officer and issuing commands. (Dkt. 22.) The Court disagrees.

While the Court accepts that Mr. Soderberg did not know Officer Palmer was an officer when he answered his hotel room door for purposes of this Motion, Officer Palmer was wearing his full MPD uniform with his gun and badge visible and verbally threatened to arrest Mr. Soderberg, thereby evoking his authority and demanding compliance. When Mr. Soderberg still refused to comply, Officer Palmer reached into Mr. Soderberg's hotel room and utilized physical compliance maneuvers only when his verbal commands were met with resistance and only until Mr. Soderberg was subdued. The Court finds that given those circumstances, Officer Palmer used the least intrusive means of force available to gain Mr. Soderberg's compliance. As such, this factor weighs in favor of Defendants.

As to the second additional factor, the Ninth Circuit has held that "an important consideration in evaluating the City's interest in the use of force is 'whether officers gave a warning before employing the force.'" *Lowry,* 858 F.3d at 1259 (quoting *Glenn*, 673 F.3d at 876.) "'Appropriate warnings comport with actual police practice' and 'such warnings should be given, when feasible, if the use of force may result in serious injury.'" *Glenn*, 673 F.3d at 876 (quoting *Deorle*, 272 F.3d at 1284)). Under this standard, Officer Palmer gave Mr. Soderberg sufficient warning prior to utilizing force. Mr. Soderberg's sworn affidavit confirms that Officer Palmer ordered him to exit his room and threatened to arrest him if he did not comply numerous times before Officer Palmer moved to physically

ORDER-22

remove Mr. Soderberg from his hotel room. (Dkt. 22-2, Aff. Soderberg.) Considering that Officer Palmer used the least intrusive means of force available and gave sufficient warnings, the Court finds that the two additional factors also weigh in favor of Defendants.

Based on the foregoing, the Court finds the City has an important government interest in individuals complying with police officer commands and its officers' ability to obtain compliance with an appropriate level of force. This second step of the excessive force inquiry weights in favor of Defendants.

### iii. The Balance of Interests

The third and "final step of the excessive force inquiry requires us to balance the gravity of the intrusion on [Mr. Soderberg's] Fourth Amendment rights against the City's need for that intrusion." *Lowry*, 858 F.3d at 1260 (citing *Glenn*, 673 F.3d at 871).

As discussed above, Officer Palmer intruded upon Mr. Soderberg's liberty when he applied force to obtain Mr. Soderberg's compliance, however, the intrusion was minimal. The City had an important government interest in Officer Palmer subduing Mr. Soderberg in order to conduct his investigation and ensure evidence was not destroyed. Mr. Soderberg did not comply with Officer Palmer's commands, therefore Officer Palmer employed physical compliance techniques to subdue Mr. Soderberg. Once Officer Palmer had Mr. Soderberg pinned to the hallway floor and handcuffed, he did not employ any additional force. (Dkt. 22-2, Aff. Soderberg.)

Taking Mr. Soderberg's allegations as true, the Court finds Officer Palmer's use of force was objectively reasonable under the totality of the circumstances. *See Forrester,* 25

F.3d at 806–07 (finding the use of pain compliance techniques on nonresisting protestors was objectively reasonable, even when it resulted in complaints of a broken wrist, a pinched nerve, and bruises was objectively reasonable). Officer Palmer did not use excessive force when arresting Mr. Soderberg, therefore there was no constitutional violation. Summary judgment is granted in favor of Defendants on Mr. Soderberg's excessive force claim.[6]

### C.     Malicious Prosecution

Mr. Soderberg maintains that Officer Palmer maliciously prosecuted him without probable cause in order to deprive him of his right to liberty under the Fourteenth Amendment. (Dkt. 3 at ¶¶ 7.19.2-7.19.5) (Dkt. 22.) Defendants argue that they are entitled to summary judgment on Mr. Soderberg's malicious prosecution claim. (Dkt. 15-1.)

In order for Mr. Soderberg to survive summary judgment on this claim, he must present evidence that Officer Palmer "prosecuted [him] with malice and without probable cause, and that [Officer Palmer] did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir. 1995). Although, in general, "a claim of malicious prosecution is not cognizable under § 1983,…'[the Ninth Circuit has] also held that an exception exists…when a malicious prosecution is conducted with the intent to…subject a person to a denial of

---

[6] Again, Defendants argue Officer Palmer was entitled to qualified immunity on the excessive force claim. However, because the Court concludes that no constitutional violation occurred, the Court need not address the issue of qualified immunity. *See Saucier*, 533 U.S. at 201.

constitutional rights.'" *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 919 (9th Cir. 2012) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985) (*en banc*)). Where the plaintiff invokes this exception, the arresting officer is liable for malicious prosecution only if the plaintiff can rebut the presumption of prosecutorial independence. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004).

Mr. Soderberg fails to meet this burden. Even though Mr. Soderberg alleges a violation of a "specific constitutional right," he has not overcome the presumption of prosecutorial independence. *See Bretz,* 773 F.2d at 1031. (Dkt. 3 at ¶ 7.19.4.) To overcome the presumption, Mr. Soderberg must make some showing that Officer Palmer "improperly exerted pressure on the prosecutor, knowingly provided misinformation to [him or her], concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy*, 368 F.3d at 1067. In support of his malicious prosecution claim, Mr. Soderberg merely alleges that Officer Palmer lacked probable cause to arrest him and violated his constitutional rights with an unlawful search and seizure. (Dkt. 22.) But, as discussed above, the Court finds Officer Palmer had probable cause and did not violate Mr. Soderberg's constitutional rights. Mr. Soderberg has made no other showing in support of his claim and as such has failed to overcome the presumption of prosecutorial independence.

Defendants are entitled to summary judgment on Mr. Soderberg's malicious prosecution claim.

ORDER-25

**D.** **Failure to Adequately Train, Supervise, and Discipline; Negligent Hiring/Retention; and Failure to Implement Appropriate Policies, Customs, and Practices.**

### i. Liability of Named Defendants in their Official Capacity

"Section 1983 claims against government officials in their official capacities are really suits against the government employer because the employer must pay any damages awarded." *Butler v. Elle*, 281 F.3d 1014, 1023 n. 8 (9th Cir. 2002). The real party in interest in such suits is the government entity the named officials work for. *Hafer v. Melo,* 502 U.S. 21, 25 (1991). As such, the § 1983 claims as against Defendants Chief Williams, Estate of Drabinski, and City Manager Stokes in their official capacities are dismissed. The City of McCall is the proper defendant. *See Ulibarri v. Shoshone Cnty.*, 2010 WL 1794183, at *4 (D. Idaho May 3, 2010).

### ii. Liability of City of McCall

Defendants maintain that Mr. Soderberg's remaining § 1983 claims fail against the City for the same reason they fail against Officer Palmer, namely that no constitutional violation occurred. (Dkt. 24.) Mr. Soderberg alleges that his constitutional rights were violated by virtue of the City's unconstitutional customs and policies, which permit the continued, flagrant abuse of citizens' constitutional rights by its police officers. (Dkt. 22.) Specifically, Mr. Soderberg argues that the City ratified Officer Palmer's conduct and negligently hired, retained, and supervised Officer Palmer. (Dkt. 22.)

"Municipalities and other local governments are considered 'persons' under § 1983 and therefore may be liable for causing a constitutional deprivation." *Pauls v. Green,* 816

ORDER-26

F.Supp.2d 961, 970 (D. Idaho 2011) (quoting *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 690-91 (1978)). In order to impose liability on a local government entity for failing to act to preserve constitutional rights under § 1983, the plaintiff must establish that (1) he possessed a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounted to a deliberate indifference to the plaintiff's constitutional rights; and (4) the policy was the moving force behind the constitutional violation. *Oviatt v. Pearce,* 954 F.2d 1470, 1474 (9th Cir. 1992).

"[A] municipality cannot be held liable solely because it employs a tortfeasor." *Monell*, 436 U.S. at 694. "'While the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights.'" *Sweaney v. Ada Cnty., Idaho,* 119 F.3d 1385, 1392 (9th Cir. 1997) (quoting *Scott*, 39 F.3d at 916).

As determined above, Officer Palmer did not violate Mr. Soderberg's constitutional rights, and therefore, the City "'cannot be held liable because no constitutional violation occurred.'" *Id.*

### iii. Liability of Defendants Chief Williams, Estate of Drabinski, and City Manager Stokes in their Individual Capacities

Defendants contend that Mr. Soderberg's remaining § 1983 claims also fail against the named Defendants in their individual capacities for the same reason they fail against Officer Palmer, namely that no constitutional violation occurred and they are entitled to qualified immunity. (Dkt. 24.) Mr. Soderberg asserts that the individually named

ORDER-27

Defendants ratified and failed to discipline Officer Palmer's conduct and negligently hired, retained, and supervised Officer Palmer. (Dkt. 22.)

Individual capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Supervisory officials cannot "be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Rather, supervisory liability may only be imposed where (1) the supervisor was personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). Thus, where there has been no constitutional violation, there can be no supervisory liability.

Because the Court has determined that no constitutional violation occurred in this case, the remaining § 1983 claims against the named officials in their individual capacities fail. Summary judgment in favor of the Defendants' is granted on these claims.

**2.     State Law Claims**

**A.     Assault & Battery and False Imprisonment**

In Count VII, Mr. Soderberg's alleges Officer Palmer's actions against him constitute an assault and battery upon him as defined by and in violation of Idaho Code §§ 18-901 and 18-903. (Dkt. 3.) Similarly, in the false imprisonment claim, Count X, Mr. Soderberg alleges that Officer Palmer, acting under the color of law and in the course and

ORDER-28

scope of his employment, arrested him without a warrant or probable cause and held him unlawfully and against his will. (Dkt. 1.) Defendants counter that these claims fail on their merits because Officer Palmer was authorized to use the force that he did to effectuate the arrest and, additionally, that the Defendants are immune from these claims because Mr. Soderberg has not provided any evidence of malice or criminal intent. (Dkt. 15, 24.) In reply, Mr. Soderberg argues that questions of fact exist, in particular, over whether Officer Palmer acted with malice or criminal intent during these events. (Dkt. 22 at 24.) The Court agrees with Defendants.

The City of McCall and Officer Palmer are expressly immune from claims arising out of assault and battery or false imprisonment under the Idaho Tort Claims Act ("ITCA"), Idaho Code § 6-904(3), because there is no evidence that Officer Palmer acted with malice or criminal intent during his contact with Mr. Soderberg. *See* Idaho Code § 6-904(3). Under the ITCA, government entities and their employees are subject to liability in the same way as a private person or entity is liable for money damages under the laws of the State of Idaho, stating:

> [E]very governmental entity is subject to liability for money damages arising out of its negligent or otherwise wrongful acts or omissions and those of its employees acting within the course and scope of their employment or duties, whether arising out of a governmental or proprietary function, where the governmental entity if a private person or entity would be liable for money damages under the laws of the state of Idaho....

Idaho Code § 6–903(1). This general rule of liability, however, is subject to several exceptions, including one which provides immunity to the government entity and/or its

public officials from certain tort claims if the plaintiff does not show malice or criminal intent. Absent "malice or criminal intent," government employees acting within the scope of their employment are not liable for claims arising out of assault, battery, false imprisonment, false arrest, and others. Idaho Code § 6–904(3).[7] The ITCA provides for a "rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment and without malice or criminal intent." Idaho Code § 6–903(5).

Aside from his bare conclusory arguments, Mr. Soderberg has failed to allege any facts which would establish that Officer Palmer acted with malice or criminal intent in this case. Just the opposite, as discussed above, the facts instead reflect that Officer Palmer was acting in the course and scope of his employment and his use of force against Mr. Soderberg was lawful. *See* Idaho Code §§ 18-921, 19-610, 19-603(1), and 37-2740. Therefore, Defendants have immunity under the ITCA and the Motion for Summary Judgment is granted on this claim. Further, the City itself is immune from liability even if its employee acted with malice or criminal intent. *Hoffer v. City of Boise*, 257 P.3d 1226, 1229 (Idaho 2011). Because Defendants Mr. Williams, the Estate of Drabinski, and Mr. Stokes were not involved in any way with the search, seizure, or arrest of Mr. Soderberg,

---

[7] Malice means "the intentional commission of a wrongful or unlawful act, without legal justification or excuse and with ill will, whether or not injury was intended." *Miller v. Idaho State Patrol*, 252 P.3d 1274, 1288 (Idaho 2011) (citations omitted). The term "criminal intent," as used in the ITCA, means "the intentional commission of what the person knows to be a crime." *James v. City of Boise*, 376 P.3d 33, 51 (Idaho 2016).

they too are not liable for any claims of assault, battery, or false imprisonment. *See e.g.*

*Miller v. Idaho State Patrol*, 252 P.3d 1274, 1287 (Idaho 2011) ("Civil battery consists of

an intentional contact with another person that is either unlawful, harmful, or offensive.");

Idaho Code §§ 18-901 and 18-903 (both assault and battery require an intentional act upon

another person).

For these reasons, the Court grants Defendants summary judgment on the state law

claims of assault and battery and false imprisonment.

## B.     Trespass and Malicious Injury to Property

The Complaint's allegations in Count XI for Trespass and Malicious Injury to

Property relate to Officer Palmer's actions resulting in Mr. Soderberg's clothing being torn

when he was removed from the hotel room and alleged violations of Mr. Soderberg's

constitutionally protected space. (Dkt. 3.) In the summary judgment briefing, Mr.

Soderberg concedes the malicious injury to property claim should be dismiss but appears

to maintain the trespass portion of the claim, arguing Officer Palmer lacked permission or

justification to make the warrantless entry into the hotel room. (Dkt. 22 at 25.) Again, the

Court has determined above that Officer Palmer's actions were lawful. Therefore, no facts

have been alleged which support a claim of trespass. Summary judgment is granted on this

claim.

## C.     Intentional Infliction of Emotional Distress

In order to establish a claim of intentional infliction of emotional distress in Idaho,

the plaintiff must prove that: "(1) the defendant's conduct was intentional or reckless; (2)

ORDER-31

the defendant's conduct was extreme and outrageous; (3) there was a causal connection between the defendant's wrongful conduct and the plaintiff's emotional distress; and (4) the emotional distress was severe." *James v. City of Boise*, 376 P.3d 33, 51 (Idaho 2015). "Liability for this intentional tort is generated only by conduct that is very extreme. The conduct must be not merely unjustifiable; it must rise to the level of atrocious and beyond all possible bounds of decency, such that it would cause an average member of the community to believe that it was outrageous." *Johnson v. McPhee*, 210 P.3d 563, 572 (Idaho Ct. App. 2009) (quotations and citations omitted). Additionally, in order "[t]o recover damages for emotional distress, Idaho law clearly requires that emotional distress be accompanied by physical injury or physical manifestations of injury." *Hopper v. Swinnerton*, 317 P.3d 698, 707 (Idaho 2013).

Mr. Soderberg's intentional infliction of emotional distress claim alleges Officer Palmer's intentional and unlawful conduct was reckless and/or outrageous and in wanton disregard of his rights and safety, beyond the bounds of decency, and, as a result, caused Mr. Soderberg to suffer severe emotional distress. (Dkt. 3.) Defendants argue summary judgment is appropriate on this claim because Officer Palmer's actions were lawful, there is no showing that Officer Palmer engaged in extreme and outrageous conduct, nor has Mr. Soderberg established causation or that he suffered severe emotional distress. (Dkt. 15, 24.) In response, Mr. Soderberg maintains a genuine question of material fact exists over whether Officer Palmer's actions during his search, seizure, arrest, and detention were extreme and outrageous and resulted in his being physically harmed and false charges being

ORDER-32

filed, all of which caused him to be placed on medication as a result of the stress of the incident. (Dkt. 22.)

The Court finds summary judgment is proper on this claim. As discussed above, the Court has determined, as a matter of law, that Officer Palmer's conduct and actions from his entry into the hotel room to the detainment and arrest of Mr. Soderberg were lawful. Therefore, Mr. Soderberg has failed to show that Officer Palmer's conduct was extreme or outrageous such that it was "beyond all possible bounds of decency." *Johnson*, 210 P.3d at 572. Nor has Mr. Soderberg pointed to any facts or evidence that the City or any of the other Defendants' conduct was extreme or outrageous. For these reasons, the Court grants summary judgment in favor of Defendants on this claim.

### D.    Negligent Infliction of Emotional Distress

Mr. Soderberg alleges the Defendants negligently breached their duty to perform each of their respective professional services in such a manner so as to not inflict emotional distress on him during and after his unlawful arrest resulting in his suffering mental and emotional distress. (Dkt. 3.) Specifically, Mr. Soderberg argues Officer Palmer breached his duty to act in accordance with Idaho and constitutional law, Officer Palmer's actions were intentional and malicious, and, as a result, Mr. Soderberg has suffered emotional distress. (Dkt. 22.) Defendants assert summary judgment on this claim is proper because the claim fails to point to any legal duty breached by the Defendants and, additionally, the Defendants are entitled to immunity under the ITCA. (Dkt. 15, 24.)

ORDER-33

In Idaho, a "negligent infliction of emotional distress claim requires a showing of (1) a legally recognized duty; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the breach; and (4) actual loss or damage." *Wright v. Ada Cnty.*, 376 P.3d 58, 68 (Idaho 2016). "Additionally, the plaintiff must demonstrate physical manifestation of the alleged emotional injury." *Id*.

As discussed above, the Court finds that Officer Palmer's conduct did not violate Mr. Soderberg's constitutional rights nor Idaho state law. As such, Mr. Soderberg has failed to show that the Defendants breached any duty they owed to him to act within the confines of the law or in the performance of "their professional services." To the extent this claim is based on allegations or claims of an assault, battery, false arrest, and/or false imprisonment, the Defendants are afforded immunity under the ITCA because, as determined above, there are no facts or evidence presented showing the Defendants' acted with malice or criminal intent. Idaho Code § 6–904(3). The Motion for Summary Judgment is granted on this claim.

### E.    Negligence

Mr. Soderberg alleges the Defendants, in their official capacities, breached the standard duty of ordinary care to treat Mr. Soderberg with dignity and respect in preservation of his constitutional rights. (Dkt. 3.) Specifically, that Officer Palmer's actions and conduct were unlawful and all of the remaining Defendants, in their official capacities, were negligent by their actions and their failure to properly train, supervise, and/or discipline Officer Palmer for his actions violating Mr. Soderberg's constitutional rights

ORDER-34

and/or failing to investigate the incident and expeditiously identify the lack of probable cause and wrongful arrest. (Dkt. 3.)

"In Idaho, a cause of action for negligence requires the plaintiff establish: (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Cumis Ins. Society, Inc. v. Massey*, 318 P.3d 932, 937-38 (Idaho 2014) (citation omitted).

Defendants argue summary judgment is proper on this claim because there has been no evidence of any negligence with regard to negligent training or discipline and because they are entitled to discretionary immunity under Idaho Code § 6-904(1). (Dkt. 15, 24.) Mr. Soderberg maintains that Officer Palmer's actions were unlawful and outside of his discretion and further argues that the City of McCall was negligent in its training and discipline of its officers and that it maintained policies and procedures which allow officers to violate the rights of citizens. (Dkt. 22.)

Because the Court has previously concluded that Officer Palmer's actions were lawful, there is no evidence or facts alleged to support the negligence claim. That is to say, there has been no breach of any duty by any of the Defendants because Officer Palmer did not violate any Idaho law or any of Mr. Soderberg's constitutional rights. Thus, there was no failure by the Defendants to properly train, supervise, discipline, or investigate nor any

policy or procedure in place allowing officers to violate citizens' constitutional rights.[8] Summary judgment is granted on the negligence claim.

### 3.    Motion for Additional Discovery

Mr. Soderberg asks the Court to stay its decision on Defendants Motion for Summary Judgment and allow him to conduct further discovery under Federal Rule of Civil Procedure 56(d). (Dkt. 21.) Defendants oppose the request arguing the Plaintiff has not been diligent in pursuing discovery in this case and has failed to show such relief is appropriate under Rule 56(d). (Dkt. 23.)

Rule 56(d) permits a court to allow additional discovery, and to refrain from considering a summary judgment motion in the meantime, where the opposing party makes a sufficient showing, by affidavit or declaration, of specific reasons of why it cannot currently present facts essential in opposing the motion. Fed. R. Civ. P. 56(d); *see Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100–01 (9th Cir. 2006) (applying the standard under former Rule 56(f)).

"To prevail on a request for additional discovery under Rule 56(d), a party must show that (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Midbrook Flowerbulbs Holland B.V. v. Holland America Bulb*

---

[8] In so ruling, the Court need not determined whether Defendants are entitled to immunity under the ITCA's discretionary function clause. Idaho Code § 6-904(1).

*Farms, Inc.*, 874 F.3d 604, 619-20 (9th Cir. 2017) (citations and quotations omitted). The burden is upon the movant to show the requirements of Rule 56(d). Failure to comply with Rule 56(d)'s requirements is a proper ground for denying the request for additional discovery and proceeding to summary judgment. *Family Home and Fin. Ctr., Inc. v. Fed. Home Loan Mortgage Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (citation omitted).

In ruling on a 56(d) motion, the Court also considers whether (1) the party had sufficient opportunity to conduct discovery; (2) the party was diligent; (3) the information sought is based on mere speculation; and (4) allowing additional discovery would preclude summary judgment. *See Qualls By and Through Qualls v. Blue Cross of Calif., Inc*., 22 F.3d 839, 844 (9th Cir. 1994); *Pfingston v. Ronan Eng'g Co.,* 284 F.3d 999, 1005 (9th Cir. 2002); *Nordstrom, Inc. v. Chubb & Son, Inc*., 54 F.3d 1424, 1436-37 (9th Cir. 1995); *Michelman v. Lincoln Nat. Life Ins. Co.,* 685 F.3d 887, 892 (9th Cir. 2012).

The general rule in the Ninth Circuit is that "where a summary judgment motion is filed so early in the litigation that a party has not had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should freely grant a Rule 56[(d)] motion." *Burlington Northern Santa Fe R.R. Co. v. Assiniboine et al.*, 323 F.3d 767, 773 (9th Cir. 2003). "In essence, district courts are expected to generously grant Rule 56[(d)] motions as a matter of course when dealing with litigants who have not had sufficient time to develop affirmative evidence." *Id.* Motions under Rule 56(d), however, should not be granted when the party seeking relief has failed to diligently pursue discovery of the evidence. *Qualls*, 22 F.3d at 844.

## A.      Sufficiency of Plaintiff's Declaration

Counsel for Mr. Soderberg has filed a Declaration stating the basis for the request to conduct additional discovery which sets forth specific facts the Plaintiff hopes to elicit from further discovery. (Dkt. 21.) In particular, the additional discovery is sought to support Mr. Soderberg's claims against the Defendant City of McCall as to which, he argues, no discovery has yet been had. (Dkt. 21 at 2-3.) Mr. Soderberg states that he intends to depose Officer Dallas Palmer to obtain evidence of prior violations in cases of a similar nature, to show the training he received, and to further develop the allegations of probable cause and exigent circumstances. Further, Mr. Soderberg intends to depose the Shore Lodge Security Officer regarding his training and his observations of the entire incident; submit interrogatories and requests for production to the City of McCall to obtain additional information including the internal investigation of Mr. Soderberg's civil rights complaint and information about other cases disposed of by dismissal due to constitutional or legal violations; depose the City of McCall's Rule 30(b)(6) record keeping representative; and depose Police Chief Justin Williams and Interim Police Chief Larry Stokes regarding the City of McCall's policies and practice of "selectively enforced" laws and constitutional violations and disciplinary actions, the role of other City officials, and training efforts. (Dkt. 21.)

The Court finds this Declaration provides sufficient specificity as to the particular discovery Plaintiff anticipates pursuing and what facts Plaintiff believes the additional

discovery would reveal. That being said, as discussed below, Plaintiff has failed to meet the remainder of his burden on the Rule 56(d) Motion.

**B.      Whether the Facts Sought to be Discovered Exist**

The additional discovery Mr. Soderberg intends to pursue may or may not exist. The individuals Mr. Soderberg seeks to depose clearly exist. Whether their testimony will reveal evidence supporting Mr. Soderberg's claims against the City of McCall or further develop the allegations of probable cause and exigent circumstances is not known. Mr. Soderberg anticipates also seeking the production of documents from the City that may or may not exist such as: "all cases since 2010 that McCall Police Officers charged crimes but those cases were disposed of via dismissal due to constitutional or legal violations" and "a copy of the McCall Police Department's internal investigation in response to Mr. Soderberg's civil rights violation complaint file with the department." (Dkt. 21-2.) It is unknown whether there are any prior similar cases involving violations and/or internal investigations of unconstitutional conduct by officers or cases disposed of by dismissal due to constitutional violations. It does seem that there may be records of any internal investigation about Mr. Soderberg's civil complaint that was done. As noted below, however, those records could have been obtained in discovery had counsel diligently sought it.

The Court finds that many of Mr. Soderberg's anticipated discovery requests are speculative with regard to whether the materials sought actually exist. In this regard, the Court is mindful that "Rule 56[(d)] is not a license for a fishing expedition in the hopes

ORDER-39

that one might find facts to support its claims." *Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co.*, 732 F.Supp.2d 1107, 1125 (D. Haw. 2010). The Court finds Plaintiff has failed to satisfy his burden under Rule 56(d) to show the additional discovery exists.

**C.    Whether Facts are Essential to Oppose Summary Judgment and Diligence in Previously Pursuing Discovery.**

The Rule 56(d) Motion seeks to extend the time for consideration of the Motion for Summary Judgment and allow time for additional discovery of facts "essential and vital" to support "Plaintiff's claims against Defendant City of McCall." (Dkt. 21, Dec. Williams at 2.) The facts and evidence sought to be discovered by Mr. Soderberg with regard to his claims against the City, however, are not essential to oppose summary judgment. As discussed thoroughly above, the Court has found Officer Palmer did not violate Mr. Soderberg's constitutional rights nor any Idaho law. Therefore, the claims against the City, as well as the other named Defendants, also fail and the proposed discovery going to the claims against the City would not change the outcome of the summary judgment decision.

The Motion refers to seeking further information in discovery regarding probable cause and exigent circumstances. (Dkt. 21.) Given the Court's ruling above, such discovery is relevant to Mr. Soderberg's opposition to summary judgment. However, Mr. Soderberg had sufficient opportunity to conduct discovery of those issues and failed to diligently do so. It goes without saying that the depositions of those who were present at the time of the incident, Officer Palmer and the Shore Lodge Security Officer, would be relevant to the claims in this case and should have been completed long ago.

ORDER-40

Those depositions should have been conducted during the discovery time-period in this case or, at the very least, Plaintiff should have sought an extension of time to complete discovery before the discovery deadline expired.[9] That was not done. Instead, Plaintiff waited until after the Motion for Summary Judgment had been filed to request an extension of the deadlines and trial date; bring to the Court's attention for the first time a host of circumstances which had prevented counsel from working on this case and meeting the deadlines. (Dkt. 16.) Appreciating those circumstances, the Court held the Telephonic Status Conference on March 27, 2017 at which time Plaintiff's counsel represented to the Court that no additional time was needed to file his response to the summary judgment motion due on April 6, 2017. (Dkt. 20.) On April 7, 2017, however, Plaintiff filed this Rule 56(d) Request wherein he stated that his expert witness on police policies and procedures who was also assisting with investigating the facts in this case had withdrawn from the case on the preceding day just prior to the response brief being due. (Dkt. 21.) Two days later, Plaintiff filed his response to the Motion for Summary Judgment. (Dkt. 22.)

Given that background and record, the Court does not find the summary judgment motion in this case was filed prematurely or early such that Plaintiff did not have sufficient time to conduct discovery or develop affirmative evidence. *See Burlington Northern*, 323

---

[9] The May 2, 2016 Scheduling Order in this case set the discovery deadline for February 10, 2017. (Dkt. 9.) The Motion for Summary Judgment was not filed until the last day before the deadline for filing dispositive motions, March 16, 2017. (Dkt. 15.) The following day, on March 17, 2017, Plaintiff requested a continuance of the deadlines and trial date. (Dkt. 16.)

F.3d at 773. Defendants filed their Motion for Summary Judgment only one day before the dispositive motions deadline and a month after the discovery cutoff date. Instead, the record shows Plaintiff was not diligent in pursuing discovery of the evidence in this case. *See Qualls*, 22 F.3d at 844. While the Court appreciates the circumstances in the fall/winter of 2016/2017 which impacted counsel's ability to work on this case, counsel had the opportunity to request additional time at the Telephone Scheduling Conference but did not do so; stating no additional time was necessary for him to file his response to the summary judgment motion.

As to the withdrawal of Plaintiff's expert witness and investigator, the Court finds that fact does not cure the lack of diligence on pursuing discovery that should have occurred prior to the discovery cutoff. Again, the discovery Plaintiff seeks additional time to now conduct is all discovery that is obviously relevant to the claims in this case and should have been sought prior to the discovery deadline expiring. The withdrawal by Plaintiff's expert months after the discovery cutoff had passed does not explain why this discovery did not happen within the discovery period. Further, whether Plaintiff's expert would have been admissible is questionable given he was not disclosed prior to the expert witness disclosure deadline in this case, which preceded the circumstances prompting Plaintiff's first request for a continuance. (Dkt. 9, 16, 23.)

### D.      Conclusion

Having reviewed the parties' arguments concerning the request for additional discovery and the entire record herein, the Court finds Plaintiff has failed to establish the

ORDER-42

requirements necessary to satisfy Rule 56(d). The facts sought to be discovered may or may not exist and Plaintiff has not shown how those facts would preclude summary judgment. Moreover, the record shows Plaintiff has not been diligent in previously pursuing discovery in this matter. Just the opposite, Plaintiff has had ample opportunity to complete discovery in this case and failed to do so. For these reasons, the Court denies the Rule 56(d) request.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED as follows:

1) Defendants' Motion for Summary Judgment (Dkt. 15) is **GRANTED.**

2) Plaintiff's Rule 56(d) Request (Dkt. 21) is **DENIED**.

3) Defendants' Motion to Strike (Dkt. 25) is **DEEMED MOOT**.

4) The case is **DISMISSED IN ITS ENTIRETY**.

DATED: January 2, 2018

Honorable Edward J. Lodge
United States District Court